IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, | |
| Plaintiff, | NO. |
| v. | |
| UNITED STATES FOREST SERVICE; VICKI CHRISTIANSEN, Chief of the Forest Service; KRISTIN BAIL, Forest Supervisor for the Okanogan-Wenatchee National Forest; and GLENN CASAMASSA, Regional Forester for Region 6 for the U.S. Forest Service, | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| Defendants. | |

## I.    NATURE OF ACTION

1.    The United States Forest Service recently approved the Mission Restoration Project and Forest Plan Amendment #59 (the "Mission Project" or "Project"), which authorize extensive logging, burning, and road building in the Mission Restoration Project area in the Methow Valley Ranger District of the Okanogan-Wenatchee National Forest.

2.    The final decision to approve the Mission Project and accompanying finding of no significant impact under the National Environmental Policy Act was signed on July 20, 2018 by then-Forest Supervisor for the Okanogan-Wenatchee National Forest Michael R. Williams. Mr. Williams retired on May 3, 2019 and has been replaced by defendant Kristin Bail, who took over the position of Forest Supervisor for the Okanogan-Wenatchee National Forest on September 1, 2019.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 1

Bricklin & Newman, LLP
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel.  (206) 264-8600
Fax.  (206) 264-9300

3.      This action seeks judicial relief with respect to the July 20, 2018 final decision and finding of no significant impact, ordering Defendants U.S. Forest Service, *et al.* to comply with the requirements of the National Environmental Policy Act (NEPA), 42 U.S.C. § 4331 *et seq.*, the National Forest and Management Act (NFMA), 16 U.S.C. § 1600 *et seq.*, and the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.* The decision approving the Mission Project was arbitrary and capricious, an abuse of discretion, and/or otherwise not in accordance with law.

4.      Plaintiff requests that the Court set aside the Mission Project decision pursuant to 5 U.S.C. § 706(2)(a) and 16 U.S.C. § 1540(g) and enjoin implementation of the Project.

5.      Plaintiff seeks a declaratory judgment, injunctive relief, an award of costs and expenses of suit, including attorney and expert witness fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 and such other relief as this Court deems just and proper.

## II.      JURISDICTION

6.      Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because this action arises under the laws of the United States and involves the United States as a defendant.

7.      Plaintiff submitted timely written comments and an objection concerning the Project and fully participated in the available administrative review processes, thus exhausting its administrative remedies. Defendants' issuance of the Mission Project Final Decision Notice and Finding of No Significant Impact was a final administrative action of the U.S. Forest Service. Thus, the Court has jurisdiction to review Plaintiff's APA claims.

## III.      VENUE

8.      Venue is proper in this Court under 28 U.S.C. 1391. All or a substantial part of the events or omissions giving rise to the claims herein occurred within this judicial district, Defendants

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 2

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel.  (206) 264-8600
Fax.  (206) 264-9300

reside in this district, and the public lands and resources and agency records in question are located in this district.

## IV.    PARTIES

9.      Plaintiff Alliance for the Wild Rockies (the "Alliance") is a tax-exempt, non-profit public interest organization dedicated to the protection and preservation of the native biodiversity of the northern Rockies bio-region; its native plant, fish, and animal life; and its naturally functioning ecosystems. Its registered office is located in Missoula, Montana. The Alliance has over 2,000 individual members, many of whom are located in Washington. The Alliance brings this action on its own behalf and on behalf of its adversely affected members.

10.     Defendant United States Forest Service is an administrative agency within the U.S. Department of Agriculture and is responsible for the lawful management of our national forests, including the Okanogan-Wenatchee National Forest.

11.     Defendant Vicki Christiansen is named in her official capacity as Chief of the Forest Service.

12.     Defendant Kristin Bail is named in her official capacity as Forest Supervisor of the Okanogan-Wenatchee National Forest. Ms. Bail's predecessor Michael R. Williams issued the Final Decision Notice and Finding of No Significant Impact for the Project on July 20, 2018.

13.     Defendant Glenn Casamassa is named in his capacity as the Regional Forester for the Pacific Northwest Regional Office, which is Region 6 of the U.S. Forest Service. In that capacity, he is charged with ultimate responsibility for ensuring that decisions made at each national forest in the Pacific Northwest Region, including the Okanogan-Wenatchee National Forest, are consistent with applicable laws, regulations, and official policies and procedures.

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel.  (206) 264-8600
Fax.  (206) 264-9300

# V.    STATEMENT OF STANDING

14.    The interests at stake in this matter are germane to Plaintiff's organizational purposes. Defendants' failure to prepare an environmental impact statement (EIS); unlawful use of delayed and uncertain mitigation for significant near-term adverse environmental impacts; unlawful amendment of the Forest Plan; and violations of the Forest Plan and the agency's own regulations will harm plant, fish and animal life and natural ecosystems in the Okanogan-Wenatchee National Forest and thereby injure Plaintiff's members who use and enjoy those resources.

15.    Plaintiff and its members observe, enjoy, and appreciate Washington's native wildlife, water quality, and terrestrial habitat quality, and expect to continue to do so in the future, including in the Project area in the Okanogan-Wenatchee National Forest. Members use and enjoy the waters, public lands, and natural resources throughout areas covered by the Project for work, recreational, scientific, spiritual, educational, aesthetic, and other purposes. Plaintiff's members enjoy fishing, hiking, camping, hunting, skiing, bird watching, study, contemplation, photography, and other activities in and around the waters and public lands throughout the Project area. Plaintiff and its members also participate in information gathering and dissemination, education and public outreach, commenting upon proposed agency actions, and other activities relating to the Forest Service's management and administration of these public lands.

16.    Defendants' unlawful actions adversely affect Plaintiff's organizational interests, as well as its members' use and enjoyment of the Okanogan-Wenatchee National Forest, including the Project area. The interests of Plaintiff and its members have been and will continue to be injured and harmed by the Forest Service's actions and/or inactions as complained of herein. Unless the relief prayed for herein is granted, Plaintiff and its members will continue to suffer ongoing and irreparable harm and injury to their interests.

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel.  (206) 264-8600
Fax.  (206) 264-9300

17.    The injuries to Plaintiff are likely to be redressed by a favorable decision of this Court because Plaintiff is seeking an order declaring that Defendants have violated the NEPA, NFMA, and APA and enjoining the Forest Service from implementation of the Project. That would, in turn, protect and preserve the natural areas and plant, fish and animal species the Plaintiff's members use and enjoy until such time as the Forest Service proposes a project that complies with federal law.

## VI.    FACTUAL ALLEGATIONS

### A.  The Affected Area

18.    The Methow Valley is a pristine, remote rural area bounded by the Pasayten Wilderness on the north, the North Cascades National Park on the west and the Sawtooth Wilderness on the south. The Mission Project area lies at the lower end of the Methow Valley on the eastern slopes of the North Cascades mountain range.

19.    The Mission Project area encompasses approximately 50,200 acres combined within the Twisp River and Lower Methow River watersheds. The project area includes the Buttermilk Creek and Libby Creek sub-watersheds, which are approximately 23,500 and 25,500 acres in size, respectively.

20.    The Methow Valley is blessed with a rich environment and spectacular natural beauty. Wildlife abounds. The project area supports crucial populations of threatened and endangered fish, birds, and animals.

21.    Buttermilk Creek and Libby Creek provide habitat for federally endangered Upper Columbia River Spring-run Chinook, threatened Upper Columbia River steelhead, and Columbia River bull trout.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 5

Bricklin & Newman, LLP
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel.  (206) 264-8600
Fax.  (206) 264-9300

22.     Buttermilk Creek, a Tier 1 key watershed under the Northwest Forest Plan, is designated as critical habitat for Spring Chinook, summer steelhead, and bull trout. Libby Creek is designated critical habitat for steelhead.

23.     The project area is home for the northern spotted owl, a threatened species that relies on late successional, old mixed conifer forests.

24.     The project area contains 1,054 acres of spotted owl nesting, roosting, foraging habitat and 4,113 acres of spotted owl dispersal habitat.

25.     The project area is home to endangered gray wolves and is part of the Lookout Pack's territory.

26.     The project area provides habitat for grizzly bears and is within the North Cascades Grizzly Bear Recovery Zone.

27.     Grizzly feed on deer and the Methow Valley provides critical winter range and migration corridors for Washington's largest migratory deer herd.

28.     Canada lynx use the project area, which includes designated Critical Lynx Habitat.

29.     Wolverine, a species proposed for listing under the ESA, use the project area.

30.     The land management plan that is applicable to the Mission Project area is the Okanogan National Forest Land Resource Management Plan (Forest Plan).

**B.  The Mission Restoration Project and Forest Plan Amendment**

31.     The United States Forest Service recently approved the Mission Restoration Project and Forest Plan Amendment #59, which will allow, among other things, commercial logging, non-commercial "thinning," road building and burning in the Methow Valley Ranger District of the Okanogan-Wenatchee National Forest.

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel.  (206) 264-8600
Fax.  (206) 264-9300

32.     In June 2017, Defendants United States Forest Service, *et al.* (collectively, the "Defendants") issued a Draft Environmental Assessment (EA) for the Mission Restoration Project.

33.     Plaintiff submitted timely comments to the Draft EA.

34.     In March 2018, Defendants issued a Final EA for the Mission Restoration Project and Forest Plan Amendment and a Draft Decision Notice and Finding of No Significant Impact (FONSI) for the Project.

35.     After Plaintiff submitted timely objections, Defendants issued a Final Decision Notice and FONSI approving the Mission Restoration Project and Forest Plan Amendment #59 on July 20, 2018.

36.     The Final Decision Notice and FONSI adopted Alternative 2 from the Environmental Assessment, together with a Forest Plan Amendment to allow for reduction of deer winter range cover in Okanogan Forest Management Areas 14 & 26.

37.     Alternative 2 includes commercial logging and non-commercial thinning on 10,220 acres of the project area; prescribed fire on 10,219 acres and 179 landings; closing, opening, and decommissioning roads; temporary road construction; replacing culverts; bridge replacement; enhancing beaver and coarse woody debris habitat; rock armoring of stream crossings, and soil restoration treatments.

**C.  The Project will result in significant adverse impacts to water resources and fish.**

38.     The EA states in its summary of cumulative effects that "Alternative 2 may affect, and would likely adversely affect, steelhead and bull trout species and their critical habitat."

39.     The Forest Service's statement in the EA that its selected alternative "would likely adversely affect" steelhead and bull trout and their critical habitat is inconsistent with the Forest

Bricklin & Newman, LLP
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel.  (206) 264-8600
Fax.  (206) 264-9300

Service's statement in the Biological Assessment that the Project "may affect, not likely to adversely affect" bull trout and steelhead.

40.    The Project will result in significant adverse impacts to water resources and fish by adding sediment to Libby Creek, Buttermilk Creek, and their tributaries.

41.    The Project will increase sediment delivery in, alter flows to, and increase temperatures in streams used by spring chinook, summer steelhead, and bull trout.

42.    The Project will increase detrimental soil erosion.

43.    The purported fish habitat improvements under Alternative 2 can only be achieved if the delayed, uncertain, and currently unfunded mitigation efforts contemplated by Defendants, including culvert replacements, are carried out.

44.    A major haul road, Black Pine Road, that is unstable and contributing sediment to Libby Creek, will require extensive and continuing maintenance to support increased logging traffic.

45.    The proposed road maintenance, construction of temporary roads, decommissioning and closure of roads, and log hauling throughout the Project area will increase sediment yield to public waters and fish habitat.

46.    Once delivered to streams, sediment deposited on the streambed causes sustained impairment of habitat for salmon and other sensitive aquatic species.

47.    Sediment in streams degrades native fish habitat by filling in interstitial spaces and pools, and decreasing inter-gravel dissolved oxygen concentrations.

48.    Deposited sediments harm native fish directly by smothering eggs in redds, altering spawning habitat, and reducing overwintering habitat for fry, and indirectly by altering invertebrate species composition, thereby decreasing abundance of preferred prey.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 8

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

49.     The Forest Service asserts in the EA that the Project will have beneficial impacts on water resources and fish, in order to justify its FONSI.

50.     The Project will result in significant adverse impacts to water resources and fish by altering flows in Libby Creek, Buttermilk Creek, and their tributaries.

51.     Increased soil compaction results in elevated peak flows in hydrologically connected streams.

52.     The Project will open 10,220 acres of forest canopy.

53.     Opening the forest canopy results in elevated peak flows.

54.     Elevated peak flows increase the movement of bedload and suspended sediments.

55.     The Project will result in significant adverse impacts to water resources and fish by increasing water temperatures in Libby Creek, Buttermilk Creek, and their tributaries.

56.     Opening the forest canopy in upland sites results in elevated stream temperatures.

**D.   The Project will result in significant adverse impacts to vegetation.**

57.     The Project will result in significant adverse impacts to crenulate moonwort (B. crenulatum), a plant species that is rare throughout its range but present in the Project area.

58.     According to the Washington Department of Natural Resources, crenulate moonwort is dependent on wet conditions and dense canopy cover. The primary threats to the species are timber harvest and road building.

59.     The Project will result in significant adverse impacts to vegetation by encouraging an increase in invasive species populations.

60.     The Project will encourage an increase in invasive species populations by increasing the amount of disturbed and bare soil through road construction and reconstruction, road maintenance, and logging activity.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 9

Bricklin & Newman, LLP
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel.  (206) 264-8600
Fax.  (206) 264-9300

61.    Disturbed and bare soils provide purchase for the seeds of invasive species.

62.    Disturbed and bare soils provide an opportunity for invasive plant species to become established on a site, displacing native plant species important to the ecology of the area.

63.    Roads that will be used for timber haul will require pre-haul road maintenance, primarily blading and shaping of the roadbed and ditch, and brush removal, creating disturbed and bare soils.

64.    Currently closed roads with restored ground cover will be re-opened, creating new disturbed and bare soils and destroying vegetation, thereby encouraging an increase in invasive vegetation.

65.    There has been no logging in the project area for decades and the previous skid trails, landings, and temporary haul road surfaces have over that time regained a vegetative ground cover. With the Project, more disturbed soil will be created on those sites in addition to the new skid trails, landings and roads.

**E.  The Project will result in significant adverse impacts to soils.**

66.    The Project will result in significant adverse soil compaction impacts.

67.    The EA's purpose and need statement states that soil compaction in the project area limits native plant growth, reduces soil biological activity and water infiltration, limits soil productivity, and reduces the resiliency of plant communities to climactic and biological changes over time.

68.    The EA's purpose and need statement asserts that a "purpose of this project is to restore soil-related processes and functions where past management practices have created detrimental effects."

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 10

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel.  (206) 264-8600
Fax.  (206) 264-9300

69.     The EA fail to provide sufficient evidence and analysis on soil compaction to support the Forest Service's FONSI.

70.     The EA contains inconsistent and incorrect statements, assumptions, and conclusions about existing soil conditions and future soil conditions under the selected alternative that resulted in inadequate disclosure and analysis of the impacts associated with soil compaction.

71.     The Forest Service asserts in the EA that the Project will have beneficial impacts on soil compaction, in order to justify its FONSI.

72.     The Forest Plan requires that no more than 15 percent of an area shall be in a puddled, displaced, or compacted condition following completion of management activities.

73.     Puddled, displaced, or compacted soil conditions are collectively referred to by the Forest Service as "detrimental soil disturbance (DSD)."

74.     The EA describes an existing condition of 4–7% DSD as a long-term, adverse, major impact on soil compaction in the project area and describes the future condition DSD under Alternative 2 as 7–10% average in each unit.

75.     The 7–10% DSD under Alternative 2 can only be achieved if the delayed, uncertain, and currently unfunded mitigation efforts contemplated by the agency are carried out.

**F.     The Project will result in significant adverse impacts to wildlife.**

76.     The Project will result in significant adverse impacts to deer.

77.     The Forest Service's Final Decision and FONSI adds a Forest Plan Amendment to Alternative 2 to allow for the reduction of deer winter range cover in Management Areas 14 & 26.

78.     Both mule deer and whitetailed deer are management indicator species in the Okanogan National Forest.

79.      The Forest Plan contains specific standards and guidelines for deer winter range cover.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 11

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel.  (206) 264-8600
Fax.  (206) 264-9300

80.    In order to comply with the goal of providing for "a diversity of wildlife habitat, including deer winter range, while growing and producing merchantable wood fiber," the Forest Plan contains standards and guidelines including Standard and Guideline MA14-6A, MA26-6A, MA26-20A, MA26-20I, and MA26-20J.

81.    Standards and Guidelines MA14-6A and MA26-6A require Defendants to manage all identified deer winter range west of the Okanogan River for snow intercept thermal cover at or above 15%.

82.    Standards and Guidelines MA14-6A and MA26-6A require Defendants to manage all identified deer winter range west of the Okanogan River for winter thermal cover at or above 25%

83.    Standard and Guideline MA26-20I requires that all timber harvests shall be designed to perpetuate deer habitat.

84.    Standard and Guideline MA26-20I requires that the operating season for logging and post-sale operations shall be restricted when necessary to protect roads, soil, water, deer winter range, and fawning areas.

85.    Standard and Guideline MA26-20J requires that operations shall be prohibited December through March except east of the Okanogan River.

86.    The Mission Project is inconsistent with Standard and Guideline MA26-20J because it lies west of the Okanogan River, and the Project relies on logging operations occurring during the winter to mitigate impacts to soils.

87.    The EA admits that disturbance to deer could occur as a result of winter logging, and deer may be temporarily displaced from the area being logged.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 12

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel.  (206) 264-8600
Fax.  (206) 264-9300

88.     The Forest Plan forest-wide Standard and Guideline 6-8 requires the Forest Service to: "Manage disturbing activities so they occur outside of critical periods to protect, wildlife (e.g., identified parturition areas, nesting sites, wintering areas)."

89.     The Mission Project is inconsistent with Standard and Guideline 6-8 because it relies on logging operations occurring during the winter in deer wintering areas to mitigate impacts to soils.

90.     The Forest Plan requires that all reforestation, timber stand improvement and related silvicultural activities proposed following issuance of the Forest Plan will be in compliance with direction contained in the Plan.

91.     The Project is in violation of Forest Plan Standard and Guidelines 6-8 and MA26-20J. The EA and Final Decision Notice and FONSI entirely fail to address this issue.

92.     The Mission Project's violations of the requirements set out in the Forest Plan to protect deer will cause significant adverse impacts to deer.

93.     The Forest Plan specifies that proper implementation of all strategies and Standards and Guidelines is the most important aspect to providing for the needs of wildlife and fish.

94.     The Forest Plan Amendment would allow proposed thinning treatments on 388 acres to reduce deer winter range cover to levels below Forest Plan Standards and Guidelines.

95.     Both commercial and non-commercial logging are proposed in deer winter range cover areas protected under the Forest Plan.

**G.  The Project EA fails to adequately analyze cumulative environmental impacts**

96.     The Forest Plan requires ongoing monitoring in order to determine:

a.   whether Management Area direction is being applied as directed;

b.   whether standards are being followed;

c.   whether the Forest is achieving the objectives of the Forest Plan;

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 13

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel.  (206) 264-8600
Fax.  (206) 264-9300

d.  whether application of Management Area direction is achieving desired conditions;

e.  whether the effects of implementing the Forest Plan are occurring as predicted;

f.  whether the costs of implementing the Forest Plan are as predicted;

g.  whether management practices on adjacent or intermingled non-National Forest System land are affecting the Forest Plan goals and objectives; and

h.  whether implementation of the Forest Plan is keeping other agencies from reaching their stated objectives.

97.    The EA does not discuss, address, or analyze the results of monitoring required under the Forest Plan.

98.    The Mission Project is inconsistent with the Forest Plan because it fails to require that the monitoring required under the Forest Plan be conducted as part of the Project.

**H.  The Project Relies on Delayed and Uncertain Mitigation**

99.    Most significant adverse environmental impacts from the Project would occur immediately, while most impacts that the Forest Service describes as beneficial would occur later, if at all, when funding becomes available. For example, 24.5 miles of open roads would be added in the project area during the Project, but road closure and decommissioning would be spread out over the period of the project or after completion of the project depending on where and when funding is available.

100.    The Mission Project area already exceeds the road density standard set out in the Forest Plan of one mile of road per square mile.

101.    Road density will increase at the beginning of and during the project, primarily as a result of reopening closed roads.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 14

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel.  (206) 264-8600
Fax.  (206) 264-9300

102.    The project area will continue to exceed the road density limit set out in the Forest Plan even after all mitigation has been implemented.

103.    The Mission Project is inconsistent with the Forest Plan because it will result in exceedances of the road density limit set out in the Forest Plan.

104.    Failing to decommission roads (which the EA proposes would occur "as funding becomes available") would cause the Project area, which already exceeds the road density limit in the Forest Plan, to exceed that limit by an even greater amount.

105.    Because the road building and opening activities would occur early in the Mission Project, and road closure and decommissioning later (if at all), it is likely that the Project would result in great exceedances of the road density limit during most of the Project's term, with resulting significant adverse effects from increased sediment delivery to Buttermilk Creek and Libby Creek and their tributaries.

106.    Culvert replacements that are important for fish passage and habitat connectivity are likewise dependent on not-yet-available funding, EA App. D, p. 397 ("culverts will be removed as funding becomes available"), as is a bridge over West Fork Buttermilk Creek, EA App. B, p. 361 ("With Alternative 2, the bridge over West Fork Buttermilk Creek, on road 4300550, would be replaced in a manner following best management practices. This replacement would occur at a future date when adequate funds become available.").

107.    Failing to replace culverts would remove the fish habitat benefits that are used to justify the Project and FONSI.

108.    Applying rock to road surfaces at stream crossings is important to prevent sediment from polluting streams and impairing fish habitat but of the 33 stream crossings recommended for this

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 15

Bricklin & Newman, LLP
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel.  (206) 264-8600
Fax.  (206) 264-9300

treatment, only six will be treated prior to log hauling and 27 stream crossings will be treated, if at all, when funding becomes available.

109.    The final Mission Restoration Project Soil Resource Report (Cherise, 2018) notes that "[m]itigations and rehabilitation will insure Alternative 2 meets the Okanogan-Wenatchee Forest Plan and Region 6 standards and guidelines" and "approximately 208 acres are at risk of increased soil disturbance from the proposed activities in Alternative 2. […] Mitigations and BMPs would limit the severity of any soil damage or its areal extent" so that no units "will exceed the Region 6 standards and guidelines for soil quality in Alternative 2." Final Soil Report at 33. If the proposed mitigation does not occur, Alternative 2 will not meet the Forest Plan and Region 6 Standards and Guidelines for soil quality.

110.    While the administrative record for the Mission Project does show a general desire to implement mitigation measures where feasible and as funding becomes available, it does not show a clear, definite commitment of resources for the Mission Project mitigation measures.

111.    The Forest Service's broad generalizations and vague references to mitigation measures do not constitute the detail as to mitigation measures that would be undertaken, and their effectiveness, that the Forest Service is required to provide.

112.    The EA asserts that there will be fewer miles of roads post-project than in the existing condition, but that assumes the completion of road closures and road decommissioning, activities that depend upon funding that is not yet available.

## I.    Threatened and Endangered Species

113.    Both the Buttermilk and Libby Creek watersheds contain federally endangered Upper Columbia River Spring-run Chinook, threatened Upper Columbia River steelhead, and Columbia River bull trout.

Bricklin & Newman, LLP
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel.  (206) 264-8600
Fax.  (206) 264-9300

114.    Buttermilk Creek is designated critical habitat for Spring Chinook, summer steelhead, and bull trout.

115.    Libby Creek is designated critical habitat for steelhead.

116.    Bull trout use West Fork and East Fork Buttermilk Creeks for spawning and rearing.

117.    The mainstem of Buttermilk Creek is used by bull trout for foraging and migrating to and from spawning habitat.

118.    Steelhead salmon spawn and rear in Buttermilk and Libby Creeks.

119.    Juvenile spring chinook salmon use the lower portions of Buttermilk and Libby Creek for rearing.

120.    Fine sediment levels are elevated within the Libby Creek watershed.

121.    Three out of the nine sites monitored in the Libby Creek watershed are categorized as Not Functioning and the remaining six sites were Functioning At Risk due to elevated levels of fine sediment.

122.    The elevated fine sediment levels in the Libby Creek watershed are likely due to the high road density (2.1 miles of road per square mile) in several areas across the Libby Creek watershed.

123.    The National Marine Fisheries Service (NMFS) concurred with Defendants' determination of "may affect, not likely to adversely affect" for UCR spring-run Chinook salmon, UCR steelhead, and their critical habitat, but NMFS' concurrence was based on the information in Defendants' Biological Assessment and was "contingent upon full implementation of the effects minimization measures."

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 17

Bricklin & Newman, LLP
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel.  (206) 264-8600
Fax.  (206) 264-9300

## VII.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### VIOLATION OF NEPA AND THE APA

#### Failure to Prepare an Environmental Impact Statement

124.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

125.    The National Environmental Policy Act of 1969, commonly known as NEPA, is "our basic national charter for protection of the environment." 40 C.F.R. § 1500.1(a) (2006).

126.    NEPA requires federal agencies "to the fullest extent possible" to prepare an environmental impact statement (EIS) for every major Federal action significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). An EIS must "provide full and fair discussion of significant environmental impacts and shall inform decisionmakers and the public of the reasonable alternatives which would avoid or minimize adverse impacts or enhance the quality of the human environment." 40 C.F.R. § 1502.1. Under NEPA, an EIS must take a hard look at environmental impacts, which includes considering all foreseeable direct and indirect impacts, without improperly minimizing negative side effects. An EIS must take a hard look at "[t]he degree to which the action may adversely affect an endangered or threatened species." 40 C.F.R. § 1508.27(b)(9).

127.    If the agency decides not to prepare an EIS, it must provide a convincing statement of reasons in the EA to explain why the project's impacts are insignificant.

128.    The regulations implementing NEPA address how to interpret the term "significantly" in the context of the balancing of beneficial and adverse impacts at 40 CFR § 1508.27, stating: "Impacts that may be both beneficial and adverse. A significant effect may exist even if the Federal agency believes that on balance the effect will be beneficial." Defendants were required to prepare an EIS to analyze the Project's probable significant adverse environmental impacts alleged herein.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 18

Bricklin & Newman, LLP
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel. (206) 264-8600
Fax. (206) 264-9300

129.     Defendants failed to take a hard look at the Project's significant adverse environmental impacts and failed to provide a full and fair discussion of those impacts.

130.     Defendants were required by law to prepare an EIS for the Mission Project and failed to do so.

131.     Defendants erred when they relied on delayed and uncertain mitigation and/or beneficial actions and impacts of the Project to justify their conclusion that the Project will not have probable significant adverse environmental impacts.

132.     Defendant's actions as described above are arbitrary, capricious, not in accordance with law, and without observance of procedures required by law, within the meaning of the APA, 5 U.S.C. § 706.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF NEPA AND APA

### Failure to Adequately Analyze Environmental Impacts

133.     Plaintiff realleges and incorporates by reference all preceding paragraphs.

134.     The Mission Project EA fails to identify and evaluate the direct, indirect, and cumulative impacts of the Project as required by NEPA. 40 C.F.R. § 1508. Cumulative effects are defined as "the impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions regardless of what agency or person undertakes such other actions. Cumulative impacts can result from individually minor but collectively significant actions taking place over a period of time." 40 C.F.R. § 1508.7.

135.     The EA fails to adequately analyze cumulative environmental impacts because the EA fails to address the results of monitoring required under the Forest Plan.

**Bricklin & Newman, LLP**
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel.  (206) 264-8600
Fax.  (206) 264-9300

136.    Because Defendants failed to conduct monitoring required under the Forest Plan, it should have, but did not, compensate for this lack of monitoring in the EA with a proper cumulative effects analysis, which would include:

    i.    a list of all past projects (completed or ongoing) implemented in the proposed project area watersheds;

    j.    a list of the monitoring commitments made in all previous NEPA documents covering the project area;

    k.    the results of that monitoring;

    l.    a description of any monitoring, specified in those past project NEPA documents or the Forest Plan for proposed project area, which has yet to be gathered and/or reported; and

    m.    a summary of all monitoring done in the project area as a part of the Forest Plan monitoring and evaluation effort.

137.    Defendant's actions as described above are arbitrary, capricious, not in accordance with law, and without observance of procedures required by law, within the meaning of the APA, 5 U.S.C. § 706.

## THIRD CLAIM FOR RELIEF

## VIOLATION OF NFMA AND THE APA

**Failure to Comply with the Okanogan National Forest Land Resource Management Plan**

138.    NFMA mandates that Defendant's activities carried out on National Forests must be consistent with the applicable land management plan. 16 U.S.C. § 1604(i); 36 C.F.R. § 219.15(e).

139.    Because the Forest Plan requires that "[t]o protect deer during winter, operations shall be prohibited December through March except east of the Okanogan River" and the Mission Project

Bricklin & Newman, LLP
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel.  (206) 264-8600
Fax.  (206) 264-9300

both proposes commercial and noncommercial logging west of the Okanogan River during the winter and specifically relies on winter logging to protect soils, the Mission Project violates the Forest Plan.

140.     The Mission Project violates the road density standard set out in the Forest Plan.

141.     The Mission Project violates the soil compaction limit set out in the Forest Plan.

142.     The EA does not provide an analysis of population numbers or trends to ensure that population viability is being assured on the Forest for any management indicator species, sensitive species, or ESA-listed species. The Forest Service has failed to monitor population trends as directed by the Forest Plan, thereby violating NFMA.

143.     The Mission Project does not comply with the ongoing monitoring requirements set out in the Forest Plan.

144.     Defendants' actions as described above are arbitrary, capricious, not in accordance with law, and without observance of procedures required by law, within the meaning of the APA, 5 U.S.C. § 706.

## VIII.   PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court grant the following relief:

A.     Order, declare, and adjudge that the Defendants have violated the National Environmental Policy Act, the Administrative Procedure Act, and their implementing regulations as set forth above;

B.     Order, declare, and adjudge that the Defendants have violated the National Forest Management Act, the Administrative Procedure Act, and their implementing regulations as set forth above;

C.     An order enjoining the Defendants from implementation of the Project;

Bricklin & Newman, LLP
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel.  (206) 264-8600
Fax.  (206) 264-9300

D.      An order requiring the Defendants to withdraw the Final Environmental Assessment and Final Decision Notice and Finding of No Significant impact until such time as Defendants demonstrate to this court that they have adequately complied with the law;

E.      Award the Plaintiff its costs, litigation expenses, expert witness fees, and reasonable attorneys' fees associated with this litigation pursuant to the Equal Access to Justice Act, and all other applicable authorities; and

F.      Grant the Plaintiff any such further relief as may be just, proper, and equitable.

Dated this 16th day of October, 2019.

Respectfully submitted, by:

ALLIANCE FOR THE WILD ROCKIES

By and through its counsel:

BRICKLIN & NEWMAN, LLP

/s/ David A. Bricklin
/s/ Claudia M. Newman
/s/ Zachary K. Griefen
David A. Bricklin, WSBA No. 7583
Claudia M. Newman, WSBA No. 24928
Zachary K. Griefen, WSBA No. 48608
1424 Fourth Avenue, Suite 500
Seattle, WA  98101
Telephone:  206-264-8600
Facsimile:  206-264-9300
E-mail: bricklin@bnd-law.com
E-mail: newman@bnd-law.com
E-mail: griefen@bnd-law.com

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 22

Bricklin & Newman, LLP
Attorneys at Law
1424 Fourth Avenue, Suite 500
Seattle WA 98101
Tel.  (206) 264-8600
Fax.  (206) 264-9300